May it please the Court, Your Honor. Leon Bloomfield and my co-counsel Richard Racklin on behalf of Appellant Premier Diabetic Services. Your Honors, if I may, I'd like to reserve the last two minutes for my co-counsel's rebuttal. In brief, Your Honors, the appellee in this case is simply trying to use the courts to rewrite an arbitration agreement that it drafted and it ultimately executed with Premier. In this case, there is no dispute, and there never has been any dispute, that there is a valid arbitration agreement, that the underlying dispute at issue here is subject to that arbitration agreement, and that the arbitration agreement specifically and explicitly provides that the parties will proceed according to the rules of AAA in carrying forth with the arbitration. Your client is accused of not doing that by failing to pay according to AAA's order. Your Honor, two points. First, we did not decide not to pay, and the record indicates my client could not pay. There were no letters to pay the arbitration fees. That's really just a matter of local color. Your argument would not be any different if you just had the money and said, yes, I feel like paying today. That's correct, Your Honor. Okay, so I know it sort of adds a patina of sympathy here, but we're not terribly sympathetic, so we might as well just skip over that. Sure. Because we pretty much have to deal with this case as if it were a case where the party simply refuses to pay. Right? I'm not sure that I do agree with that, Your Honor, but I agree that I would be making the same argument if we had simply refused to pay, but we haven't. We could not pay. That's what the record indicates. Meanwhile, you've spent quite a lot of money litigating the question of whether you have to pay. Excuse me, Your Honor? Meanwhile, you've spent quite a lot of money litigating the question of whether you have to pay. Yes, Your Honor. My client hasn't spent that money, but the principles of my client, the former principles of my client have spent a lot of money. So they could have spent the money on arbitrating instead. They could have in much the same way that the appellee could have simply paid the fees to AAA, and we could have been done with this arbitration over two and a half years ago. Well, let me ask you a question about the AAA rules. It says that when parties agree to arbitrate under the rules, they authorize the AAA to administer the arbitration, and under fees, it gives a fee per party, and it says that the expenses are generally borne equally by the parties. So I'm not really sure where you come up, and AAA must have thought that because they billed each party in this case. So where does the obligation arise that the other side must pay and you don't have to? There is no obligation that the other side must pay, Your Honor. The agreement provides, though, that in the event that the fees and expenses have not been paid in advance, on the occasion when AAA asks for those fees and expenses of the arbitrator to be paid in advance, and for whatever reason those fees and expenses are not paid, the AAA rules, and thus the arbitration agreement between these two parties, provides a specific remedy. It provides that in that instance, the AAA will go to the parties and say, if you want to proceed, you may post all the fees. And if those fees, though, are not posted for whatever reason, then we, our authority is under the agreement that you have signed, is to either suspend or to terminate this proceeding. And that's exactly what these parties agree to. But I guess my question is, if you had an obligation, your client had an obligation to pay half and they didn't, why did the district court have every opportunity to say, you pay up if you want an arbitration? Because, Your Honor, the AAA's, the district court's authority under the FAA is limited. Correct? It provides that it's determination, it's to determine if there's a valid agreement, if the underlying dispute is subject to that valid agreement, and then if so, then to have the arbitration proceed on that basis, on the basis that the parties agree. That's right. But under the AAA rules, which you have started out by saying were your rules, it says, in the normal case, each party is to bear its share of the costs. Actually, the applicable provision is actually Rule 54, Your Honor, which says that the AAA may request that the parties deposit the arbitrator's fees and expenses in advance. And then Rule 56 goes on and specifically says, in the event that those fees and expenses aren't paid in advance, here is what the AAA can do, and here's how this particular arbitration will proceed. Your Honor, I would concede that the appellee wishes that the arbitration agreement said something different. They wish that it said something to the effect of, the parties will each bear 50 percent of the arbitrator's fees and expenses if requested by the AAA. And in the event that one of the parties fails to post those fees, the AAA may take or shall take the default of the nonpaying party. I am sure that that is what they wish that Rule said, but that is not what it says. It's not a default. AAA says if we don't get paid, we don't proceed. That's part of, I mean, their rules have been incorporated into your agreement. Correct. Okay? So they didn't get paid. That's correct. They didn't proceed. But your argument, as I understand it, is that there were, they didn't proceed, A, because you didn't split the fees, and B, because the other side didn't pay the fees. Absolutely, Your Honor, and I would go one step further than that, because in this case, even though it's not required by the rules or by the agreement that the parties had entered into, AAA suggested to the parties that there are three arbitrators that you've elected, that you're supposed to be in front of. Let's do this with one arbitrator. It will reduce the fees dramatically, and we'll go forward. Which is the rule that makes the default rule splitting the fees? I'm sorry? Which AAA rule makes the default rule the split, splitting the fees? Well, there isn't actually a default rule for the fees to be split, Your Honor. There's a default rule for expenses, meaning the cost of witnesses and AAA arbitrator expenses to be split. That's, I believe, Rule 52. So where did the split come from? It was just what the AA? That's right. The AAA, Rule 54 says that the AAA can require the parties to post the fees of the arbitrator in advance. And the AAA has the authority, actually, to request that in any way that it sees fit. It can't ask for all of it from one, some from one, none. It can do what it wants. And then it goes on, though, and this is very important. It goes on, and it explicitly had considered this situation. If it doesn't have those fees, it wants to give the party who wants to proceed and has the ability to pay or wants to pay the opportunity to have this go forward, okay, have the arbitration go forward. And then at the end of the day, Rule 45C of the AAA rule says, look it, in the final award, you the arbitrator, you can apportion the fees and the costs and the expenses of the arbitration any way you see fit. Counsel, let me ask you about M17. I'm sorry? M17 on the administrative fees in the AAA rules, administrative rules, at least two things. M17, I believe, Your Honor, those refer to mediation. Okay, so that doesn't apply to your situation. No, Your Honor. The rules that are applicable are the ones that begin with R. What is your response to the argument of opposing counsel that the California statute is a part of the agreement by default because it applies, it requires each side in an arbitration to pay a pro rata share of expenses and fees unless there is an express agreement to the contrary? Your Honor, I would say that 1284.2, which I believe is the California statute you're referring to, is simply inapplicable in this situation. 1284.2 is a default provision. It says when there's no provision in an agreement as to how those fees are going to be split. Okay, what's the provision in your agreement that is different than that? Sure, Rules 51. First of all, we incorporate the AAA rules, and then Rules 51, 52, 53, 54, and 56. In addition to Rule 45, all determine how those fees are going to be apportioned among the parties and what authority the arbitrator will have in the final award to decide who should pay what at the final ballot. In addition to that, Your Honor, 1284.2 ---- I guess I don't understand how that's different because the statute says all the expenses shall be borne equally by the parties. That's right. And Rule 52 says all the expenses shall be borne equally by the parties. That's right. So I don't understand why one supersedes the other. They seem the same. Because the expenses are different than the arbitrator's compensation. It's Rule 54 which requires the prepayment or the potential prepayment of the arbitrator's fees and expenses. Rule 51 has to do with the administrative fees. Then Rule 52 has to do with the expenses of the arbitration. 53 gets into how the arbitrator's compensation is set. Rule 54 ---- But wait a minute. Actually, doesn't ---- in terms of a default rule, the deposit rule says the AAA may require the parties to deposit in advance such sums of money as it is necessary to cover the expense of the arbitration, including the arbitrator's fee. Correct. So these rules seem to use the arbitrator's fee as one of the expenses of the arbitration. So then if you go back to 52, there is a default rule which says that they should be borne equally by the parties unless they agree otherwise. I respectfully read it differently than that. I read the arbitrator's fees as being a different issue than the arbitrator's expenses. But, Your Honor, I ---- It doesn't say. It says the other expenses of the arbitration. And the deposit language clearly uses the same term, the expense of the arbitration, including the arbitrator's fee. Your Honor ---- So it seems little way to escape the fact that in this agreement, in this provision, the arbitrator's fee are an expense of the arbitration. Your Honor, I would still go back to the point that if that were to be the case, and my point ---- I mean, we have acknowledged that Rule 54 allows the arbitrator, and we agreed to that, to require us to make those deposits. What I'm saying is I'm going to the next step. And the next step is that in this private agreement between these parties, they've decided and they agreed that in the event that those fees or expenses weren't paid for whatever reason, that Rule 56 would govern what would happen next. And in that case, AAA has the authority to suspend or terminate the proceeding, which is exactly what ---- Does it have authority to order the default of the nonpaying party? I'm sorry? Does it have authority to order the default of the nonpaying party? No, Your Honor, it doesn't under this agreement. The parties could. That's what I was trying to say before. I heard what you were trying to say before. And this is in ---- No, Your Honor. I do follow. This is in Rule 56. Correct. And Rule 56, in your view, sets forth all of the remedies for nonpayment. All of the remedies ---- I'm not talking about what it was. It's not ---- Yes, no, that's correct, Your Honor. I just want to understand your position. That is correct. Not all of the potential things the parties could have agreed to, but what they actually did agree to. No, no, I ---- Your Honor, Rule 31 ---- I understand those things could be written differently, but in your view, all of the consequences and all of the possible remedies for nonpayment are contained in Rule 56. That is correct, Your Honor. That's what the parties agreed to. That's correct, Your Honor. Remind me one more time. What is Rule 56? What is Rule 56? Is it part of the AAA rules? Yes, Your Honor. And the way the parties agreed to it is by incorporating the AAA rules into their agreement. Absolutely, Your Honor. In your view, and again, I'm not trying to put words in your mouth. I just want to understand. Go ahead. In your view, the parties could have said, we agree to rules of the AAA, except that when it comes to Rule 56, we want to have a different rule. Your Honor, the parties do that. Parties can do that. Absolutely, parties do it all the time. Thank you. But the net result, if the AAA invokes Rule 56, is that there is no arbitration. Right? And so now somebody is going to the district court and saying, you have authority to order an arbitration. There will only be an arbitration. Right now there is no arbitration. Even though there's an agreement to arbitrate, there's not going to be an arbitration. So in other words, to say Rule 56 is the remedy, it's not a remedy for getting an arbitration when there hasn't been an agreement to arbitrate. It's only a remedy for not having an arbitration. No, Your Honor. I think I would disagree with that. It actually is the remedy. These are private agreements. The parties can do pretty much anything they want in deciding what the rules of the games are going to be. They've taken themselves out of the court system. They've taken themselves out of the jury trial. They've essentially eliminated. But you're essentially saying that the agreement to arbitrate was illusory. No, Your Honor. Just a minute. Because either party can refuse to pay, and if either party refuses to pay, there will not be an arbitration. So the agreement to arbitrate was just entirely illusory. I would respectfully disagree. I don't think it's illusory at all. I think that what it says is that the parties agree that they will agree to arbitrate, and the parties have incorporated a provision in that agreement which says, I know if the other side, for whatever reason, either because they cannot or they will not, they do not pay, and I want this arbitration to go forward because I believe that my claim warrants it, then I know that I will post those fees. I will have to post them all. And at the end of the day, I will ask the arbitrator, when I prevail, I will ask the arbitrator to have them all apportioned to me. Your Honor, I can tell you I have been on the other side of this situation where I have had clients who have determined that they will not proceed with an arbitration because they decided that they didn't want to post the fees because it wasn't worth it to them. They didn't think the payback, that the ultimate judgment that they could get, would either be enforceable or that the defendant was going to be judgment-proof, or for whatever reason, they decided not to go forward. But that was the deal they made. They understood that at the time, or they should have understood it at the time, and I would submit that Apelli knew it as well and now is trying to fashion a different way of going forward. If I could just add one small note, Your Honor, because you did mention 1284.2, and there is one very important distinction about 1284.2, and that is it has – it is the California statute. It has nothing to do with the prepayment of fees or expenses. It is simply used as an allocation after the – at the end of an arbitration, which is very similar to the Rule 45C in this case. So just to clarify your position for a minute. Sure. It is not – as I understand your position, if the agreement had said the fees will be split evenly and paid in advance, and each party is to pay their deposit in advance, and that's what it said, and there was no incorporation of the AAA rules, then Judge Walker would have had authority under the Federal Arbitration Act to order you to pay. Yes, Your Honor. So in other words, your position isn't that ordering payment is more than ordering arbitration and therefore he couldn't do it. You're recognizing that if there is an agreement to pay for the arbitration, that's part of – and the arbitration won't go forward anyway. Otherwise, you do have the authority not only to order in the abstract that you arbitrate, but that you pay for it. In the absence of a provision like Rule 56? I believe so, Your Honor. Or if the arbitration agreement said that the arbitration should be in New York and one of the parties was refusing to go to New York. Then they – then definitely the district court can – that's exactly right. The district court can order the parties to arbitrate according to the agreement that they signed. So the only real question is, what does the agreement mean? And if you're right, you win, and if they're right, they win. Yeah, I think that's correct, Your Honor, but I think that the agreement is clear on its face because there's no ambiguity in the rules. There's no ambiguity in the AAA's application of these rules, and the remedy is so apparent here. This is, I mean, not in any attempt to garner any sympathy, Your Honor, but this is supposedly a million-dollar claim against my client. There is – for the last two years, we have been unable to get this matter arbitrated. We have made – given the fact that we don't have the money to pay for the arbitration, we have made every effort to make it possible to move forward. We have fully participated in these proceedings. That is annoying because you could have taken the money that you're using to litigate and paid for the arbitration. I understand there are different people, but those same different people could have paid for it. Well, Your Honor, it's not meant to annoy you. I mean it with all sincerity. It's an important point. Your sympathy is that it usually backfires, and I was trying to warn you not to do that, but you wouldn't listen. You have a pretty good legal argument, but your sympathy argument isn't so hot. You know, I'm not looking for the – no, no, my point is this, Your Honors, that there's a million-dollar claim here, and essentially what the appellee has said, we don't think that there's a million dollars to collect here, so we're not willing to put up any money, even though we agreed to proceed on that basis. I think you better just say, look, we want title to be intransigent, and that's it. I think you're better off than trying to sort of make it seem like, oh, poor us. No, Your Honor, I'm not saying poor us, but I'm saying we have not been intransigent at all. No, poor us, sure you are. It's only a brief, you know, and I've got some title to tell you about. I think your time's up. Thank you, Your Honor. Good morning, Your Honors. Gary Lafayette appearing on behalf of LifeScan, and my client did pay its share of the money. It paid over $57,000. But that's – the arbitration agreement says what happens. If they don't pay, you can pay the rest of it. You can go to one arbitrator, or you can mal-arbitrate. Why isn't that the end of it? Why does Judge Walker get to get involved in this? Actually, Judge Walker got it right, Your Honor, and this is why Judge Walker got it right. We start out with the paragraph with Rule 52 of the arbitration rules, and Rule 52 does specifically state all other expenses of the arbitration, including da-da-da-da-da-da, will be paid equally between the parties. And then what it says, and you incorporate into Rule 52, Rule 54, which deals with deposits, and then going one step further, we get a letter that comes from AAA that is consistent with both of those rules, and it's a letter that's dated March 3, 2000, which is attached as Exhibit – this is page 327. The problem I have is we can't have district courts going around policing the nuts and bolts of arbitrations. You know, what if the arbitrator says, you will provide discovery, and one side says, no, I don't feel like, you know, I dispute discovery. You run back in the district court. I mean, the Arbitrary Tribunal has the case. If there is a failure of one side to perform according to the rules of arbitration, the Arbitrary Tribunal has sanctions it can impose. It can impose, as it did in this case, monetary sanctions. It can issue a default under certain circumstances. It can adjust the payment schedule so as to – it can cut down to one arbitrator instead of three. Why do we have district judges getting involved in this process? The whole point of this thing is to get it out of the courts and into the Arbitrary Tribunal, which seems to be perfectly capable of dealing with these problems itself. It's that line that appears in the Chiron opinion at page 1130, which states, if the response is affirmative on both counts, then the act requires the court to enforce the arbitration agreement in accordance with its terms. Okay. So let's say they don't provide discovery. You know, the Arbitrary Tribunal says you will provide your principle on day X at opposing counsel's law office and with the following materials, too. And they have some argument that, no, this is privileged, or we don't feel like it, or it's too burdensome, or Lord knows what. Do you go back to district court and say, oh, the arbitral agreement says you discover, and therefore we want the district judge to arbitrate this? No, Your Honor. And I think there's a big difference between that. There we're talking about the administration of the arbitration from a procedural standpoint of what's going to be evidence and what's going to not be evidence. Here we have something which is much more fundamental, and that is whether or not there is the issue here is whether or not there is compliance with the agreement that compels arbitration. Why is this more fundamental? The issue, the difference that this is about whether or not there's going to be an arbitration at all. That's exactly what this is about. The other is not, Your Honor. There can be an arbitration. You guys pay it all, and there is an arbitration. You guys agree to one judge, and there is an arbitration. So this is not really a question about whether there's an arbitration. It's a question of whether you are going to make hard choices under the agreement which you signed. With all due respect, that's not the agreement my client entered into. That would be a novation. That would be something else. That would be a modification of the agreement. But my client didn't agree to that. You did not, if you had had an agreement that said in the agreement or if the AAA rules said that the parties will split the costs and pay them in advance, period. Yes. Then I don't think any of us would be having a problem. That's what we have, Your Honor, because if you look at this, and I point out by incorporating as I heard you guys do this morning, Rule 54 read in conjunction with Rule 52. Let's assume that, okay? Let's assume that. Then there's also another rule. There's Rule 56. But before we get to Rule 56, Your Honor, we have to look at that letter that came from AAA, and the letter specifically stated in no uncertain terms, in accordance with Rule 54 of the rules, each party is directed to make the following deposit. And it specifically says each party. And then after that. That's certainly right, but it doesn't say what happens if you don't. If I could proceed. Just like saying they say, you know, you will provide the following discovery, it doesn't say what happens if you don't. To figure out what happens if you don't, you then have to go to the rest of the rules. I can go further, Your Honor. Yeah. The March, the November, the November 3. And by the way, just. I'm sorry, Your Honor? Where is the letter in the excerpt? It's at page 327 of the respondent's supplemental. Is that the one with the tabs or the one without the tabs? Respondent, we have an appellee. Page 327. Are they consecutive? Yes, they are. Of the respondent. We see appellees, and then we see our spin on appellant. C26. It's appellee supplemental excerpt for record volume one. Okay. C27. Volume one. There is no 27. Yeah, it's the one without the tabs. And it's volume two of that. It's the little one. You've got the big one. The little one. That's exactly right, Your Honor. Okay. I don't have it. Anyway, go ahead. This was at the front end of the arbitration process. And if you look at the page there, it specifically states in accordance with Section R54 of the rules, each party is directed to make the following deposit. They split it equally right down the middle. Then consistent with that process, on November 3, 2000, Triple A sent out another letter, one specifically to Mr. Racklin, which is attached as Exhibit 17 in their documents at page 20, that again requires, in this case, the appellant to file, to post the fee. Who does that get you? We can't have district judges going around. Every time that Triple A sends out a letter, you can invoke a district judge to make sure that these people comply with any Triple A's law. The whole point is it's a self-contained system. Triple A makes orders. Triple A enforces, enforces according to the law. And at the end, Your Honor, if you look at that, at the end, the only authority which was granted at the very end is to suspend or terminate. And if we look at that and we ask ourselves, what does that mean to suspend? That's simply not right. They can suspend. They can terminate. You guys can pay the balance of the fees and go forward, or you can go with one arbitrator. Aren't those the four choices? It uses the word may. It does. It says... One arbitrator would violate your agreement. I'm sorry. I can hear you. One arbitrator would violate your own agreement, right? That's correct, Your Honor. The three arbitrators are in your agreement. That's correct. So that would be asking you to give up your agreement. That's correct, Your Honor. But that isn't true necessarily. I'm sorry? You could. There's nothing that prevents you from doing it. There's no constitutional right being given up. I would give up the... You can give up any right. I would give up the benefit... Your client has counsel, very good counsel, I might say, and if they decide to give it up, they can, right? I would lose the benefit of my bargain. There's nothing to stop me from renegotiating any agreement that I have. But at this point, after the appellant has received over eight months of notice that they are alone responsible for this portion, and then three days before the arbitration is to start, to come forward for the first time and identify, well, we're not going to pay, and the only alternative that's available at that point... The valuable lesson that your client learns about next time, next time put the split of fees right in the agreement. Hindsight, as we always say, is 20-20, Your Honor, but that's not what we have to deal with here. We do have... The deal you struck, the deal you struck, relegates these disputes to the AAA according to their rules. And you may not like it, you may wish you had a different deal, but the AAA give you choices, plenty of choices, unpleasant all of them, but that's... The magic word, Your Honor, is the word may. It doesn't use the word shall. The word may is a discretionary act. The word shall is an obligatory word. And so when we look at Rule 56, when we look at Rule 56... Does that, even if you do this, the arbitration won't go forward? No, the may pay their portion of these fees. That's a may, it's not a shall. But also the may require the deposit is also a may, right? I'm sorry, Your Honor? Rule 54, the AAA may require the deposits. The shall is only at the end. That is, Rule 52 doesn't seem to deal with deposits. It deals with at the end who is going to pay, how the fees are going to be split. But we're not dealing with that now. We're dealing with deposits. With regard to deposits, both Rule 54 and Rule 56 are permissive. Use the word that they're permissive. And then we have Rule 52, which is a shall, which is that the split shall be a portion between the parties. That's a shall. So we start out with a shall in Rule 56. We then go to a may with regard to deposits. And the may is we may require you to post these fees in advance. That's all the may says. But your argument is that because they did require it, therefore it becomes part of the contract. That's correct. So then it went on when that didn't work, and then they asked you to pay it up. Why isn't that also part of it? They didn't ask us to do that. But that's the one point where I take exception. At no point did AAA say that LifeScan has to or is obligated to pay their portion. They said if you want to go forward. It says if you want to, you may do this. And if you don't, we're not going to arbitrate. Well, it said we're going to suspend. Suspend so that we can do exactly what we did to come here. Because otherwise, what is going to happen with the suspension? A suspension is something we're going to hold it into abeyance until something else can happen. And the only other thing that can happen would be for us to go to the district court and say there is a breach of this agreement, and we want to compel arbitration. Pay the money. That's the one thing that can happen. Pay the money today. You could arbitrate tomorrow. You could agree to one arbitrator. Give up the right to three arbitrators. It would be painful. If you look at. You can't do that. If you look at their. I agree that you could do that. You agree that you could do that. That I have the discretion to pay? Yes. I have the discretion to pay, but it was my discretion. You have the discretion to give up on three arbitrators and go with one. I could do that. I could always modify the agreement. But that would take me away from the agreement. Modify the agreement and not arbitrate at all, but that's changing the agreement. So I still see a clear difference between giving up the arbitrator and the question of whether paying alternatively under the. Your paying isn't part of. The possibility of your paying to avoid termination or suspension isn't part of the agreement. Those seem to me to be two different questions. That's right. So the question is the second one. Is the default, if they won't pay the deposit in advance, as part of the agreement, that you have then two options, to pay yourself or to take a suspension? That's correct. And I can take the suspension and take additional action, which would mean to enforce the agreement. My question is why is their obligation to pay half any more inflexible part of this agreement than your possibility of paying the whole. A hundred percent. I'm sorry? Why should I pay a hundred percent? Why should they pay half? Because that's what they were ordered to do. And you were ordered if you didn't want to have a suspension to pay it yourself. No, it wasn't an order. I understand it wasn't an order. It was an order if you don't want to have a suspension. It was an option that I could have. You know, this strikes me that I know there was some discussion with opposing counsel about intransigence in this, but it strikes me that neither party seems to actually want to go forward with the agreement and arbitrate the claim. Because if your client thinks this is a good claim and this money will eventually come back to it at the end, then why not pursue it aggressively? And the other side has obviously dug their heels in and said, hey, you know, we'll pay thousands for lawyers and not one penny for tribute to the AAA. And I guess my frustration is there is an agreement that requires arbitration, and both parties seem determined to do whatever they can to undermine that. And I just find that really quite troublesome. Actually, with all due respect, my client has been constantly pushing the arbitration. It took all the depositions down in Florida. It moved to compel and got sanctions awarded against them for their recalcitrance. It filed a motion for summary judgment. And with all due respect, when we came up to November 8th or November 11th and were sitting there prepared with witnesses flying out here to proceed with this arbitration, we wanted the arbitration. But what we didn't want to do was to be taken additionally advantage of by being required to pay monies that we weren't required to pay. Your client and the other side have both now paid, I'm sure, more money to litigate this case than either of you would have had to pay to arbitrate it. If you're asking me about the business decision, Your Honor, that goes behind the tribute versus, it's not that. It is this. I am sitting here and I am hearing on the one hand. I am witnessing this client, this, the appellant, transferring funds from one corporation into the hands of another corporation, and I have deposition testimony to that effect. And I'm sitting here. Counsel, if you were to, maybe this is a business question and not a legal question, but if you knew that in six months after arbitration you would get $900,000 plus your fees back, why wouldn't you pay the fees up front? Am I to believe the appellant here when he comes in and he says that my client's not going to have any money and so what am I going to do, throw another $57,000 down a tube that already has over $950,000 in it? I understood that by bringing the litigation. I mean, it is very hard to sit here and figure out what's going on. Actually, it hasn't been that much, with all due respect. It has been less than that, but I can appreciate the court's concern for that. But at the other hand of this, this issue is one that completely undermines the integrity of commercial arbitration because of what you have is everybody signing on to this AAA agreement, and at the end that party who doesn't want to participate in arbitration has the ability to frustrate it by not paying their portion of the fees. We are not going to have arbitration. It's as simple as that. If that's a concern, you can draft a better agreement next time. But you didn't. I mean, the agreement doesn't specify it. What you are trying to do is really something quite unprecedented. What you're trying to do is getting a district court to enforce an order, an interlocutory order from our tribunal. I haven't heard of this. It just strikes me as a prescription for undermining arbitration and completely burdening district courts with matters that shouldn't be involved in it. I think it's not. I think what we're saying is to the extent that you look to the order from the arbitrator, the only thing that you're really looking at there. Why, if you win on this one, why aren't you going to be here back next time that the Arbiter Tribunal orders discovery and the other side says no, and you're not happy with the remedy that AAA gives you, why aren't you going to be back in district court and pretty soon district judges will become magistrate judges for arbitrators without handling discovery disputes? We're relying upon two different things before we even get to looking at an arbitrator's decision. What we're looking at is, one, the AAA rules. To the extent that the appellant says that the AAA rules do not address the issue, then we rely upon the default provision in the California rule and the California statute, because the California statute then controls what should happen. It doesn't say anything about payment up front. It says in the end you split it, and even that can be modified by agreement. But we're not in the end. We're up front, and the question really is who pays the money up front. California doesn't tell you a thing. The contract doesn't tell you a thing. All you've got is an order of the AAA, and that order of AAA gives you some unpalatable choices. I don't see why you should be able to get out of those unpalatable choices because you didn't draft a better agreement. I don't think they're unpalatable choices. I think when we're ---- Go on. Just take one of them. Counsel? And you'll have an invitation tomorrow. Counsel, I'm going to ask a question in this case that Judge Kosinski asked earlier today, and that is whether there's any point to suggesting that these parties use the mediation services of our court. I mean, you've never gotten as far as the arbitrator at AAA, but is that even ---- We don't charge. I know. I've used your services before, Your Honor. I have not opposed in any way to proceeding to try and resolve this case in some other method. Mediation uses more than an appropriate manner to try and do that. I can do that. What does opposing counsel think? Do you think there's any ---- Yes. I understand. You already took twice your time, you know. I think we've probably spent enough time on this case. We'll defer submission for a week, same terms as before. If we hear from you all within the next week, ask me for more time because you are making progress with settlement, or if we vote for our mediators that they are working with you and they need more time. Use the A word. This is an A word. Our mediators, our three mediators, then we will defer submission further. If not, a week from today, the case will be submitted and we will decide it.
judges: Kozinski, Graber, Berzon